## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

INNOVA/PURE WATER, INC.

     **Plaintiff,**

v.

CASE NO.: 99-1781-CIV-T-23A

SAFARI WATER FILTRATION
SYSTEMS, INC., d/b/a SAFARI
OUTDOOR PRODUCTS,

DISPOSITIVE MOTION

     **Defendant.**

_____/

### SAFARI'S MOTION FOR SUMMARY
### JUDGMENT OF NON-INFRINGEMENT

     Safari Water Filtration Systems, Inc. d/b/a Safari Outdoor Products ("Safari"), by its

undersigned counsel, pursuant to Rule 56, moves for summary judgment and the entry of an

Order finding that Safari has not infringed U.S. Patent 5,609,759 and dismissing Innova's

complaint.

### MEMORANDUM IN SUPPORT

     Plaintiff Innova/Pure Water, Inc. ("Innova") contends that a water filtering device Safari

designs, manufactures, and sells infringes Innova's patent. However, Innova's patent must be

construed to apply only to water filtering devices where (1) the cap and filter are mechanically

connected together to form a unitary device and (2) the filter is self-venting. Safari is entitled to

summary judgment because Safari's product is a bottle-mounted filter that does not form a

unitary device with the cap, and Safari's filter is not self-venting.

## I.   **STATEMENT OF UNDISPUTED FACTS**

Innova's patent, U.S. Patent 5,609,759 ("the '759 patent"), was filed on June 2, 1995 and

issued on March 11, 1997. (A complete copy of the '759 patent and the prosecution history of

the '759 patent is attached as Exhibits A and B, respectively.) The '759 patent discloses a

unitary filter-cap assembly that enables a user of a bottle fitted with the filter assembly to drink

purified water. An advantage of joining the cap and filter together is that they can be removed

from the bottle in one motion. (Dep. of John Nohren, p. 24).

In ordinary use, a consumer removes the Innova unitary filter assembly, fills the bottle

with water, replaces the filter assembly, and inverts the bottle to receive filtered water. (*See* the

'759 patent). After water has been expelled from the bottle, air returns to the bottle through the

filter media, rather than through a valve that vents the filter. When a filter is designed so that air

returns through the filter media rather than through a valve the filter is said to be "self-venting."

(Raymond G. Bryan Declaration, Expert Report of June 29, 2000, ¶ 12).

As originally filed, the '759 patent application included 21 claims. All were rejected in a

first Office Action. After a protracted and complex prosecution that included several Office

Actions, Amendments and Responses, the '759 patent issued with 23 claims with Claims 1, 15,

and 22 being independent claims and the remainder being dependent claims. Claims 1 and 22

are directed to a filter assembly for use with a bottle having a circular cross section neck or open

end to simultaneously cap the neck or open end and filter liquid poured out of the bottle through

the neck or open end. Claim 15 is directed to a container for dispensing filtered water. Innova

asserts in the present action that Safari infringes independent Claims 1 and 15 and dependent

Claims 5, 7, 11, 14, and 17-20. (Nohren Dep. at pp. 9, 22-23, 32-35, 40-41).

2

The accused device is a bottle-mounted filter designed and sold by Safari embodying U.S. Patent No. 5,840,185 (the "Safari patent") filed on July 23, 1996, and issued on November 24, 1998. (A copy of the Safari patent is attached as Exhibit C.) The Safari filter is not mechanically connected to the cap by welding, adhesive or other means. In ordinary use, a consumer must unscrew and remove the cap, separately remove the Safari filter from the neck of the bottle, fill the bottle with a liquid, place the filter back in the neck of the bottle, and screw the cap back on the top of the bottle. (*See* Safari patent, Fig. 2 and Column 2, lines 30-38). A consumer cannot remove the Safari filter and the cap in one motion, as can be done in the device disclosed in the '759 patent.

In addition, unlike the device disclosed in the '759 patent, the Safari filter is not self-venting either in design or in normal use. In normal use, a bottle utilizing the Safari filter is inverted and squeezed to force the liquid through the filtering media and out of the cap. (Declaration of Douglass E. Hughes ¶ 5). When the bottle reinflates after water has left the bottle, air travels into the bottle through a central core in the filter to an air return check valve, also known as an umbrella valve or umbrella flap, positioned at the bottom of the filter casing. (Hughes Declaration at ¶ 5; Bryan Report, August 28, 2000, ¶ 13, 14). In short, the air does not travel through the Safari filter media in normal operation. (Bryan Report, August 28, 2000, at ¶ 13-16).

## II.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment

A party is entitled to summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56.

TPA#1636656.01

The burden of establishing the absence of a genuine issue is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, the burden extends only to facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)("Factual disputes that are irrelevant or unnecessary will not be counted."). Once this burden is met, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

## B.   **Infringement**

To show that a patent claim is infringed, a plaintiff bears the burden to proffer a valid construction of the claims and then establish that the properly construed claims are infringed by the accused device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). This can be done by either literal infringement or by the Doctrine of Equivalents.

Literal infringement requires that *each and every* limitation in a claim is present in the accused device. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 117 S.Ct. 1040, 1054, 520 U.S. 17, 40 (1997), *Kahn v. GMC*, 135 F.3d 1472, 1476 (Fed. Cir. 1998), *cert denied*, 525 U.S. 875, 119 S.Ct. 177 (1998). Alternatively, a defendant may be liable for infringement when *each and every element* of a patent claim, on an element-by-element basis, can be found either literally or equivalently (i.e. without any substantial difference) in an accused device. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28-30 (1997).

However, *as a matter of law*, the Doctrine of Equivalents is unavailable where a patentee has given up broad claim coverage during prosecution of the patent application to overcome a

rejection based on prior art. This Doctrine of Prosecution History Estoppel prevents the patentee from recapturing through equivalents any broad coverage that the patentee had given up to obtain allowance during prosecution of the patent application and also prevents the patentee from ensnaring the prior art by interpreting claims as if limitations incurred by abandonment of claims or by amendment of the claims were not present. *Id.* at 39 n.8; *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Thus, where claims were rejected as being unpatentable over prior art, and amendments or new claims having additional limitations were then added to achieve patentability, those new limitations are held to be critical to the patentability of the claims, and the patentee cannot use the Doctrine of Equivalents to recapture a broader interpretation to cover any apparatus that does not have literally the recited elements. *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 681 (Fed. Cir. 1988).

The Doctrine of Equivalents also has other limitations. The grant of a patent on an accused device is relevant to the issue of infringement under the Doctrine of Equivalents, because, for the United States Patent and Trademark Office to grant a patent, the invention must be non-obvious. That is, insubstantial changes would likely be found obvious, so it follows that if a patent is granted, the invention was not obvious and the changes between the invention and the previously patented technology were also not insubstantial. *See Zygo Corp. v. Wyko Corp.*, 38 U.S.P.Q.2d 1281, 1286 (Fed. Cir. 1996); *Roton Barrier, Inc. v. Stanley Works*, 37 U.S.P.Q.2d 1816 (Fed. Cir. 1996). As Judge Nies explained while providing additional views in *National Presto Indus., Inc. v. Westbend Co.*, 79 F.3d 1112, 1128 (Fed. Cir. 1996):

> If the second patent requires practice of the first i.e., the second merely adds an element "D" to a patented combination A + B + C, the combination A + B + C +

D clearly infringes. Conversely, if the second patent is granted for A + B + D over one claiming A + B + C, the change from C to D must not have been obvious to be validly patented. Evidence of a patent covering the change, in my view, is clearly relevant unless the patent is invalid. A substitution in a patented invention cannot be both nonobvious and insubstantial.

*Id.* at 1128.

## C.   Claim Construction

In construing patent claims, a court may rely upon both intrinsic and extrinsic evidence to determine the meaning of the claims. *Markman v. Westview Instruments,* 52 F.3d at 979-81. Intrinsic evidence includes the prosecution history. *Augustine Med., Inc. v. Gaymar Indus.*, 181 F.3d 1291, 1300 (Fed. Cir. 1999); *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d at 291. When claims are amended or rewritten in the face of a prior art rejection, any changes or amendments made to narrow those claims are to be strictly construed. *Diversitech Corp. v. Century Steps, Inc., supra.* A patentee is bound to "particularly point[] out and distinctly claim[] . . . the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection." *Sage Prods. v. Devon Indus.*, 126 F.3d 1420 (Fed. Cir. 1997).

Patents contain independent and dependent claims. While the independent claims stand alone, the dependent claims are to be construed to include all the limitations of the independent claim incorporated by reference into the dependent claim. 35 U.S.C. § 112. A dependent claim cannot be infringed if the claim or claims from which it depends are not infringed. *Id.*; *Wolverine World Wide v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994). Therefore, it is necessary to examine only the details of the independent claims (Claims 1 and 15) asserted by

6

Innova in this action.  As will be shown, Safari does not infringe either of these claims, so, by definition, Safari cannot infringe dependent Claims 5, 7, 11, 14, or 17-20.

III.   **INNOVA'S PATENT MUST BE CONSTRUED TO REQUIRE THAT THE FILTERING TUBE AND CAP ARE MECHANICALLY JOINED TOGETHER BY WELDING, ADHESIVE OR SIMILAR MEANS TO FORM ONE UNIT**

Claim 1 of Innova's patent discloses a "filter assembly," while Claim 15 discloses a "container for dispensing filtered water." Both claims require a tube of filtering material and a cap to be "operatively connected" to each other by welding, adhesive or similar means. The intrinsic evidence, including the specification and the prosecution history of the '759 patent, as well as the extrinsic evidence such as expert opinions, establish that "operatively connected" means that the filter and cap must be mechanically joined together by welding, adhesive or similar means to form a unitary device.

A.   **The '759 Patent On Its Face Requires That The Cap And Filter Be Mechanically Connected to Form One Unit**

The pertinent portions of the specification of the '759 patent disclose that a tube of filtering material is "operatively connected" to a cap by "sonic welding, a mechanical connection, or adhesively." (Abstract of '759 patent.) The specification discloses that a "mechanical connection" may be "an O-ring received by cooperating grooves formed in the tube," or the mechanical connection may be created by providing projections in the cap that engage a flange on the tube of filtering material. (Column 1, lines 61-67.) Ultrasonic, thermal and spin welding, as well as an ultraviolet cured adhesive, are also disclosed as manners in which to "operatively connect" the tube of filtering media to the cap. (Column 4, lines 21-28.)

In every example and disclosure of how to "operatively connect" the filter with the cap in the '759 patent, the connection creates one unitary structure, or "filter assembly." This filter

7

assembly can be removed from the bottle in one piece, so as to allow a rapid refilling of the bottle. The methods of operatively connecting the filter and the cap were specifically argued by the applicant of the '759 patent as reasons to allow the patent to be granted over the prior art. (Amendment, January 30, 1996, page 10.)

The '759 patent expressly provides that the terms "operatively connected" and "mechanically connected" mean that the filter and cap are connected by weld, adhesive, an O-ring in a groove, a friction fit, or a flange pushed or screwed past projections in the cap to form a unitary structure, so the cap and filter, as a unitary structure, can be removed from the bottle together in one motion. As Mr. Nohren admitted in his deposition, "The purpose of putting it [the filter] on threads is so that the consumer would not have to *pick it* [the filter] *up independently*...What we did was to try to add an improvement over just dropping it [the filter] in [the bottle neck]." (Nohren dep. p.24).

Thus, Innova's patent expressly applies only to devices where the filter and cap are mechanically connected to each other to form a unitary device that can be removed from a bottle in one motion. Notwithstanding that fact, Innova contends that any filter that sits in the neck of a bottle and comes in contact with the cap when the cap is threaded onto the bottle is "operatively" or "mechanically" connected to the cap within the claims of the '759 patent. Innova's argument must be rejected as a matter of law.

**B.      The Prosecution History Of The '759 Patent Does Not Allow Innova's Construction Of The Term "Operatively Connected"**

Innova contends that the '759 patent applies to filters – like the Safari filters -- that are designed to be mounted in the neck of a bottle. For example, Mr. Nohren testified as follows:

Q:   What is the mechanical action between the [accused Safari] cap and the tube [filter] that connects the two?

A:   They're brought into intimate surface connection by means of the thread on the bottle…. They're compressed together.

Q:   -- only to the extent that they touch each other when the cap and the bottle are screwed together?

A:   Otherwise they don't function. So they're operatively connected….

Q:   Without the bottle, there's no mechanical connection between the cap and the tube. Correct?

A:   I'm not sure. I think mechanical connection could be the placement of one component to the other. If you turn and put the cap on top of the filter on the table, it would be mechanically connected…. They would be joined by gravity.

Q:   The only thing holding them together would be gravity?

A:   In this instance.

(Nohren dep. pp. 34-35).

Innova's argument that "operatively connected" can be extended to cover a bottle-mounted filter that merely comes in contact with the cap when the cap is assembled together with the bottle — such as with the accused device — ignores at least two patents that were cited by the Examiner in connection with the '759 patent application.  Specifically, the Examiner reviewed the McDevitt patent, U.S. 2,869,724, issued in 1959, and the Daniels patent, U.S. 5,431,813, issued in 1995. (A copy of each patent is attached as Exhibits D and E, respectively).  Both of these patents disclose bottle-mounted filters that come in contact with the cap when the

9

cap is attached to the bottle.  Innova's own arguments on page 14 of its August 1, 1996

Amendment preclude a claim construction where "operatively connected" extends to cover a

bottle-mounted filter.  There, Innova argued, "McDevitt shows an axial filter…using the flange

to suspend the filter… .  This is contrary to Dehn et. al *and the claimed invention*."  (emphasis

added).

Indeed, the '724 McDevitt patent claims a filter cartridge where "the top of said cartridge

[is] of greater diameter than its side walls to form an annular flange supported on the upper end

of said neck [of the bottle], and a cap in threaded engagement with said neck [of the bottle]…"

Similarly, the Safari patent — which the accused device embodies — claims "A filter cartridge

for a sports bottle having a mouth with a longitudinal centerline, a neck defining the mouth, a

neck lip and a cap having a downwardly-protruding sealing ring, the cartridge comprising: a

media container with an axial centerline for placement generally coaxially within a sports bottle

neck; and an extension connected to said media container for extending between a sports bottle

neck and cap for securing the cartridge into the sports bottle…" A comparison of the drawings in

each of these patents reveals that both patents involve bottle-mounted filters that come in contact

with the cap when the cap is attached to the bottle.[1]

Nohren's '759 patent simply cannot be read to extend to a bottle-mounted filter that

merely abuts or comes in contact with the cap when the bottle and cap are assembled together

because such bottle-mounted filters have been disclosed since at least 1959.

---

[1] The same is true for the Daniels patent, issued in 1995, which summarizes the invention, in part, as: "a water bottle
which has a neck area within which is located an access opening… Within this access opening is removably
mounted a filtering apparatus. The filtering apparatus has a head section which is supported within the access
opening with the filter housing extending partially into the internal chamber of the water bottle… The bottle
includes a cap which is securable over the head section closing such to the ambient."

**C.      Extrinsic Evidence Also Establishes That The '759 Patent Does Not Apply To Bottle-Mounted Filters**

Extrinsic evidence also reveals that "operatively" connecting the filter to the cap is vital to the claim construction of the '759 patent. Safari has provided the Court with expert opinions of three members of the Patent Bar, all of whom agree that the '759 patent must be construed to apply only to devices in which the filter and cap are connected together to form a unitary device. (See the Declarations of Joseph E. Kovarik and John R. Thomas, and the letter opinion written by Thomas Aitken attached as an exhibit to the deposition of Mr. James Wingo). For example, after noting that the '759 patent makes repeated references to "filter assemblies" and that an "assembly" is defined in Webster's New World Dictionary as the "fitting together of parts to form a complete unit," Mr. Kovarik concludes that "a fair and objective analysis of the term 'operatively connected' as used in the specification, as it is defined in dictionaries and with reference to the '759 drawings, requires that *the tube of filter material be connected to the bottle cap to form a 'filter assembly.'*" (Kovarik report at pp. 10, 12) (emphasis supplied).

Similarly, John R. Thomas, a professor at George Washington University Law School concludes that "operatively connected" within the meaning of the '759 patent means that the filter must "*connectively engage* with the cap." (Report of John R. Thomas, p. 5)(emphasis supplied). A third patent attorney, Richard L. Aitken, was retained by a non-party, Porex Technologies Corporation, to give an opinion with regard to this issue in 1997. Mr. Aitken concluded that the '759 patent's use of the term "operatively connected" means the filter tube must be *linked* or *attached* to the cap. (Letter from Richard L. Aitken, p. 1, 2, Exhibit 1 to Deposition of James Wingo) (emphasis supplied).

11

Thus, "operatively connected" must be construed to mean a mechanical connection between the filter and cap (by welding, adhesive or similar means) to form a unitary device or assembly.

### D. Proper Claim Construction Requires The Filter Assembly To Be "Self-Venting"

Independent Claims 1 and 15 also require the filtering material to be "self-venting." This language was added to the original claims to overcome a rejection based on U.S. Patent 690,457 ("the Parker patent"). (Amendment, August 1, 1996, page 3). (A copy of the Parker patent is attached as Exhibit F.) The Parker patent discloses a filtration assembly that is placed in the neck of a drinking apparatus. (*See* Parker). The Parker patent discloses a vent tube 16, with an aperture 17. (Parker, Page 2, lines 15-18). The vent tube extends through the filtering device. (Parker, Figs. 1-2). The purpose of this vent tube is to allow air to pass directly into the body of the drinking apparatus, allowing the liquid in the apparatus to flow freely. (Parker, Page 2, lines 12-18, 48-52).

Innova differentiated the invention of the '759 patent from the Parker patent and explained the addition of the "self-venting" limitation by stating that Parker "*requires a vent tube 16 having a bottom aperture 17 in order to function properly (i.e. the filter is not self-venting).*" (Amendment, August 1, 1996, page 4) (emphasis added). Thus, Innova represented to the Examiner that a filter is not self-venting when a vent tube in the filter allows air to return to the bottle. Indeed, the Examiner concluded that "a filter having a venting passage *is not self-venting.*" (Examiner's Office Action, Responsive to Communication File on August 1, 1996, page 7) (emphasis added).

A later Office Action also dictates that if a filter has a venting passage that allows air to flow into the bottle without passing through the filtering media, it is not self-venting.[2]  As originally filed, claim 21 of the '759 patent required an air vent, separate from the filtering media, to allow "water to flow from the bottle."  ('759 Patent Application, June 2, 1995, p. 17.)  After Innova added the self-venting limitation to the '759 patent application, this original claim 21 was rejected.  The Examiner concluded:

> [T]he recitation in claim 21 of the vent formed in the filter tube is now considered to conflict with applicants' newly amended language "self-venting," recited in claim 19.  In the last line of the instant response, applicants define a self-venting filter tube as one which does not require a vent in the tube (as shown in the Parker '457 reference).  *Since claim 21 requires a vent formed in the tube, claim 21 is considered to conflict with the recitation of a self-venting tube in claim 19, as defined by applicants.*

(Examiner's Office Action, Responsive to Communication File on August 1, 1996, page 2) (emphasis added).

Thus, the Examiner recognized that a filter that allows air to enter the bottle through a vent or valve — rather than through the filter media — is not self-venting.  The Examiner's understanding of a term — as evidenced in the file history — is highly probative of what the term means.  *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 872-873, 875-876 (Fed. Cir. 1998).  The file history demonstrates that a filter tube is self-venting when the air returns to the bottle through the filter media rather than through a filter vent or valve.

Innova embraced this construction of self-venting in its International Application Published Under the Patent Cooperation Treaty, International Publication Number WO 99/36152

---

[2] Usually, this "vent" or "venting passage" is covered by a valve, so the liquid cannot exit the bottle through the venting passage when inverted.  The valve insures that the liquid passes through the filter media — rather than the venting tube — on the way out of the bottle.

13

(the "PCT Application"). (Attached as Exhibit F.) In the disclosure of the PCT Application,

Innova explained how a vent, fitted with a relief valve, aids in reinflating a bottle after it is

squeezed to pass water through the filtering media. Innova stated:

> To permit the rapid return of air to fill any vacuum created as a result of the
> exiting water, and partial collapse of the pliable container in which the assembly
> 131 is mounted, a normally closed relief valve 132, is incorporated. *The path of
> least resistance for air to flow back through the filter is through the base of the
> filter directly above the normally closed relief valve 132.*

(PCT Application, p. 18, lines 19-24) (emphasis added). Innova then went on to state, "[a]s an

alternative, the carbon filter can be made with porosity above 20-30 microns *and self-vent,

eliminating the need for the valve 132.*" (*Id.* at p.18, lines 28-30). Innova clearly has admitted

that a filter that utilizes a vent and valve combination during normal operation is not self-venting.

Accordingly, a filter tube that utilizes a vent and valve combination in actual operation is

not "self-venting" and is not within the scope of the '759 patent. Not only is this interpretation

of the patent consistent with the prosecution history of the '759 patent and Innova's own words,

this interpretation is also consistent with the canon of construction that states when claims are

amended or rewritten in the face of a prior art rejection, any changes or amendments made to

narrow those claims are to be strictly construed. *See Diversitech Corp. v. Century Steps, Inc.,

supra.*

IV.   **SAFARI'S DEVICE DOES NOT INFRINGE INNOVA'S PATENT**

    A.   **Safari's Device Does Not Literally Infringe Innova's Patent Because Safari's
Device Does Not Have A Filtering Tube Operatively Connected To A Cap**

As discussed above, the '759 patent requires a filtering tube and a cap to be operatively

connected, that is, mechanically connected together by welding, adhesive or other means to form

a unitary device. Safari's filter is not mechanically connected to the cap by *any* means to form a unitary device. Accordingly, Safari's filter does not infringe the '759 patent.

Indeed, Safari has provided the Court with the opinions of three patent attorneys (Messrs. Kovarick, Thomas, and Aitken), all of whom agree that the Safari filter does not infringe the '759 patent because the Safari filter is not "operatively connected" to the cap. Safari has also provided the Court with the opinion of Raymond G. Bryan, a licensed Professional Engineer who has a Masters of Science degree in Mechanical Engineering as well as seven patents. Mr. Bryan also opines that the Safari filter does not infringe the '759 patent because the Safari filter is not "operatively connected" to the cap. (Bryan Report, June 29, 2000, ¶ 10).

Rather than using the structure disclosed in the '759 patent, the Safari filter uses the structure disclosed in the Safari patent. Although the Safari filter differs slightly from the filter disclosed in the Safari patent, the method of association with the bottle cap is substantially the same. The Safari filter is inserted into the neck of a bottle and the cap is then screwed onto the bottle neck, without any O-rings, adhesives, or welds.

The Safari filter does not connect to the cap in any way. The cap and filter cannot be removed from the bottle together as a unitary "filter assembly." In order to refill the accused device, one must unscrew the cap, remove the filter from the neck of the bottle, refill the bottle with water, return the filter to the neck of the bottle, and then screw the cap onto the bottle. In short, Safari has forgone both the structure and the beneficial functions of a unitary cap-filter device.

15

Because the Safari device does not contain each and every element of either Claim 1 or

15 of the '759 patent, either identically or through an equivalent, it does not infringe the '759

patent.

### B. Safari's Device Does Not Literally Infringe Innova's Patent Because Safari's Device Is Not "Self-Venting"

As discussed above, in order to obtain patent protection, Innova added a "self-venting"

limitation to the application that matured into the '759 patent.  During the application process,

Innova argued that a filter having a venting passage utilizing a check or relief valve is not self-

venting.  Further, in the PCT Application, Innova conceded that a filter utilizing a valve to vent a

bottle is not self-venting.  As a result, the '759 patent must be construed to apply only to filters

that do not have a valve or vent to return air to the bottle.

Safari's filter is designed and manufactured to have an umbrella flap — or valve —

located on an end of the filter casing creating a venting passage that allows air to enter the bottle

without passing through the filter media.  In actual operation, that is exactly what happens.

Safari's expert engineer, Mr. Bryan performed experiments to determine how the Safari filter

operates under normal conditions.  Using a standard Safari filter, Mr. Bryan concluded that "the

non-self venting behavior of the product through use of the separate return path was *easily*

*observed*."  (Bryan Report, August 28, 2000, ¶ 8) (emphasis added).  This non-self-venting

behavior was demonstrated because when air returned to the bottle of the Safari device, the air

traveled through the umbrella valve.  "No air was observed to return to the bottle through the

filter media." (*Id.* at ¶ 13).

16

Because Innova contended, both while prosecuting its patent application before the Patent and Trademark Office and in its PCT Application, that a filter that had a valve was not self-venting, Safari's filter, which has a valve, does not infringe the '759 patent.

**C.    Safari's Device Does Not Infringe The '759 Patent Under The Doctrine of Equivalents**

Safari's device does not infringe the '759 patent under the Doctrine of Equivalents. First, as discussed more fully above, the Doctrine of Prosecution History Estoppel applies in this case. Innova contended when it applied for the '759 patent that the methods of operatively connecting a filter tube with a cap to form a unitary device are the very aspects of the invention which rendered it patentable. The Doctrine of Prosecution History Estoppel prevents Innova from now expanding the scope of the patent beyond the limitations imposed during prosecution of the patent.

In addition, Innova specifically defined "self-venting" during the patent prosecution and stated that this "self-venting" limitation was also necessary for patentability. Safari's filter operates in the manner that the applicant of the '759 patent described as *not* "self-venting." Therefore, by Innova's own words, the Doctrine of Prosecution History Estoppel prevents the Doctrine of Equivalents from applying to Safari's filter.

Finally, the fact that a separate patent was obtained for Safari's device, in the face of the '759 patent serving as prior art, evidences that the difference between Safari's device and the '759 patent are nonobvious. Because insubstantial changes to technology are frequently obvious, it follows that the changes to the technology presented by the accused device are substantial, limiting the application of the Doctrine of Equivalents. *See Zygo Corp.*, 38 U.S.P.Q.2d at 1286; *Roton Barrier, Inc.*, 37 U.S.P.Q.2d at 1816; *National Presto Indus., Inc.*, 79 F.3d at 1128.

17

## V.    **CONCLUSION**

Innova's patent must be construed to apply only to water filter devices in which the cap

and filter are mechanically connected to each other by welding, adhesive or other similar means

to form a unitary device, and in which the filter is self-venting. Safari is entitled to summary

judgment of noninfringement of the '759 patent because Safari's filter device does not have a cap

and filter that are mechanically connected to each other by *any* means to form a unitary device,

and because Safari's filter is not self-venting.

Respectfully Submitted,

Nancy J. Faggianelli
Florida Bar  Number 0347590
John C. Clark
Florida Bar Number 176140
CARLTON, FIELDS, WARD,
EMMANUEL, SMITH & CUTLER, P.A.
Post Office Box 3239
Tampa, FL 33601
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

James R. Ghiselli
Cynthia A. Mitchell
Hogan & Hartson, L.L.P.
1800 Broadway, Suite 2000
Boulder, CO  80302
Telephone:  (720) 406-5300
Facsimile:  (720) 406-5301

Attorneys for Defendant

18

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished by United States Mail to Frank R.

Jakes, Esq., Johnson, Blakely, et al, 100 North Tampa Street, Suite 1800, Tampa, FL  33602; and

Robert A. Vanderhye, Esq., Nixon & Vanderhye, P.C., 1100 North Glebe Road, Arlington, VA

22201.

_____
                          Attorney

19

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

___ Exceeds scanner's page limit
___ Physical exhibit prevents scanning
_X_ Other: _Physical Pleading prevents Scanning_

# **PLEASE REFER TO COURT FILE**